UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00163-GNS-LLK

THOMAS ALLEN WYATT                                                                                          PLAINTIFF

v.

KILOLO KIJAKAZI, ACTING COMMISSIONER[1]
SOCIAL SECURITY ADMINISTRATION                                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Objection (DN 29) to the Magistrate Judge's Findings of Fact, Conclusion of Law, and Recommendation (DN 28). For the reasons outlined below, the objection is **OVERRULED**, and the Magistrate's Report and Recommendation is **ADOPTED**.

### I.   STATEMENT OF FACTS

Thomas Allen Wyatt ("Wyatt") filed an application for disability insurance benefits under Title II of the Social Security Act on February 21, 2017. (Administrative R. 181-82 [hereinafter R.]). On or about November 10, 2014, a pick-up truck struck Wyatt while he was attempting to secure a front-end loader to a trailer. (R. 44, DN 19). Wyatt alleges his disability began on that date due to a closed head injury. (R. 15, 20). Wyatt claims he suffers daily migraine headaches; frequent migraines with blurred vision, vomiting, and fatigue; short term and long term memory loss; problems with leg muscles, including restlessness, weakness, and fatigue; depression, severe

---

[1] Kilolo Kijakazi ("Kijakazi") became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), Kijakazi is substituted as Defendant in this suit. *See* 42 U.S.C. § 405(g).

mood swings, dizziness and vertigo; inability to focus for extended periods of time; and sensitivity to light and loud noises. (R. 73-74, 93, 204). On December 31, 2016, Wyatt was last insured for Title II benefits. (R. 17).

Wyatt's disability claim was initially denied on June 23, 2017. (R. 89, 90). Reconsideration was denied on denied on December 1, 2017. (R. 91, 108). Subsequently the Administrative Law Judge Steven Collins ("ALJ") conducted a video hearing on May 23, 2019, where the ALJ presided from Louisville, Kentucky. (R. 15). Wyatt was virtually present from Bowling Green, Kentucky, and was represented by his attorney, Bryan J. Dillon. (R. 15). Robert G. Piper, an impartial vocational expert, testified at the hearing. (R. 15). The ALJ subsequently issued the Commissioner's final decision on October 31, 2019. (R. 12).

The ALJ employed the governing five-step sequential analysis. At the first step, the ALJ found that Wyatt had not engaged in substantial gainful activity from his alleged onset date of November 10, 2014, through the date he was last insured, December 31, 2016. (R. 17). At step two, the ALJ found that Wyatt had the following severe impairments: chronic headache, cognitive impairment, concussion syndrome, adjustment disorder with anxiety, and obesity. (R. 17). At the third step, the ALJ further found that Wyatt did not have an impairment which met or medically equaled one of the impairments listed in Appendix 1. (R. 18). In determining Wyatt's residual functional capacity ("RFC"), the ALJ found that:

> [Wyatt had the RFC to perform] medium work as defined in 20 CFR 404.1567(c) except only occasional climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds. The claimant would have been able to frequently balance. The claimant must have avoided unusually bright or strobe light exposure. He would have been able to have moderate level noise exposure or less, as defined by the Selected Characteristics of Occupations (SCO). The claimant must have avoided concentrated exposure to wetness and vibration. The claimant must have avoided all exposure to workplace hazards. The claimant would have been able to perform simple, routine, and repetitive tasks defined as minimal variation in job duties day to day. The claimant would have been able to make simple work-related decisions.

> The claimant could have tolerated few, if any, changes in the workplace. The claimant would have been able to performs these tasks for 2 hour segments over an 8 hour workday.

(R. 19). At the fourth stage, the ALJ found that Wyatt was unable to perform any past relevant work. (R. 21). Finally, at the fifth step, the ALJ ultimately found that a significant number of jobs existed in the national economy that Wyatt could perform. (R. 22).

After an unsuccessful appeal to the Appeals Council, Plaintiff filed the present action. (R. 1-3, 177-80; Compl., DN 1). The Court referred the matter to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for consideration and preparation of a report and recommendation. (Soc. Sec. Order ¶ 1, DN 20). The Magistrate Judge issued Findings of Fact, Conclusions of Law, and Recommendation ("R. & R.") recommending that the Court affirm the ALJ's determination and dismiss Plaintiff's Complaint. (R. & R. 9, DN 28). Plaintiff then objected to the R. & R. (Pl.'s Obj., DN 29).

## II.     JURISDICTION

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment, affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g).

## III.    STANDARD OF REVIEW

Social security cases may receive different levels of review in federal district courts. The Federal Magistrates Act allows district judges to designate magistrate judges to issue "proposed findings of fact and recommendations for . . . disposition . . . ." 28 U.S.C. § 636(b)(1)(B). Once the magistrate judge files a recommendation, each party may object within fourteen days. 28 U.S.C. § 636(b)(1). Those parts of the report to which objections are raised are reviewed by the district judge de novo. *Id.* This differs from the standard applied to the Commissioner of Social

3

Security's decision, which is reviewed to determine "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). Evidence that a "reasonable mind might accept as adequate to support a conclusion" is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (citation omitted). It is "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (internal quotation marks omitted) (citation omitted). Where substantial evidence supports the ALJ's decision, a court is obliged to affirm. *See Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (citation omitted). Finally, the district court may consider any evidence in the record, regardless of whether cited in the ALJ's decision. *See Mullen v. Bowen*, 800 F.2d 535, 545-46 (6th Cir. 1986).

### IV. DISCUSSION

#### A. The ALJ's Finding that Wyatt Could Perform Jobs in the National Economy Is Supported by Substantial Evidence

Wyatt avers that the ALJ's conclusion that there were jobs in the national economy he could perform was not supported by substantial evidence. (Pl.'s Obj. 2). To affirm the Commissioner's determination, the decision must be supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). "[T]here must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged." *Sikes v. Kijakazi*, No. 4:20-CV-00119-HBB, 2021 U.S. Dist. LEXIS 150847,

at *21 (W.D. Ky. Aug. 10, 2021) (citations omitted). "The conclusion of the administrative law judge, who has the opportunity to observe a claimant's demeanor, should not be discharged lightly." *Buckman v. Kijakazi*, No. 4:20-CV-00085-HBB, 2022 WL 615027, at *8 (W.D. Ky. Mar. 2, 2022) (internal quotation marks omitted) (citation omitted). An agency's decision is not subject to reversal "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (citation omitted).

Statements as to "pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a). To make that determination, a two-prong test is used:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a); SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017). Discounting some measure of reliability is appropriate where the ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence. *See Bradley v. Sec'y of Health & Hum. Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988). Further, use of "boilerplate" language in an ALJ's findings does not necessarily equate with a failure to support those findings. *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015) ("We likewise consider the boilerplate unhelpful and poorly worded. Our chief concern

with the popularity of this template, however, is the risk than an ALJ will mistakenly believe it sufficient [to explain a finding without further elaboration] . . . ."").

Wyatt asserts that the ALJ failed to substantially support the conclusion that there were jobs in the national economy for which Wyatt was qualified. (Pl.'s Obj. 2). Wyatt states:

> The ALJ does not mention which symptoms' intensity, persistence and limiting effects are not entirely consistent with the medical and other evidence in the record, nor why they are not entirely consistent, or to what degree they are not consistent. The ALJ's decision never addresses Plaintiff's testimony regarding his migraine headaches, the associated nausea, or the need to lay down to alleviate the headaches.

(Pl.'s Obj. 3). Wyatt's argument that the ALJ did not specifically identify which of Wyatt's symptoms were found inconsistent is not supported. The ALJ summarized Wyatt's testimony as follows:

> His headaches occur daily. He has had to adjust his lifestyle due to ongoing headaches and sensitivity to light. He does take medications for his headaches, but they do not always work. The headaches cause him to become nauseated. The longest he remembers going without a headache since the accident is 2-3 days. He has been told he forgets things such as leaving the stove on or water running. He also takes medication for depression and anxiety.

(R. 19). Following the general finding that Wyatt's symptoms were inconsistent with the evidence in the record, the ALJ elaborated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the evidence shows even though he was involved in a serious accident, he was not hospitalized. Further, evidence shows that while he continued to complain of headaches, imaging of his brain was essentially normal, and he continued to receive conservative medication treatment. Additionally, mental status examinations of record are also normal. While he reports memory loss, the evidence, prior to the date last insured, did not show him to have significant memory loss. The evidence prior to the date last insured shows ongoing conservative treatment for headaches, as well as medication treatment for depression without any specialized outpatient mental health treatment ordered.

(R. 20). The ALJ specifically indicated that Wyatt's complaints of headaches were not in accord with his brain imaging studies. (R. 20; R. & R. 6). Wyatt argues that the ALJ did not specifically address the symptoms he testified to regarding the effects of his headaches, such as the need to lie down or avoid light. (Pl.'s Obj. 2). Implicit in the discussion of Wyatt's headaches, however, is the ALJ's determination that the *effects* of the headaches Wyatt complained of also do not match the medical evidence presented.

The ALJ was not required to follow the opinion of the vocational expert. "An ALJ may accord less weight to the vocational expert's response to a hypothetical that is premised on the claimant's subjective testimony." *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 856 (11th Cir. 2013) (citation omitted). The ALJ explained:

> As to the opinion evidence, vocational expert Sharon Brown Lane found the claimant would be unable to work. She made these findings based upon her own review of the medical evidence of record. Her findings of are given little weight, as she is not a medical professional and there is no opinion in regards the most the claimant would be able to perform rendered by any treating physician that would have allowed such an opinion to be rendered.

(R. 21). The state agency reviewing physicians stated that the objective medical evidence alone does not support the "intensity, persistence, and functionally limiting effects" that Wyatt described. (R. 80, 99). Regarding the medical and non-medical evidence in the record, the physicians found Wyatt's statements partially consistent to the extent of his alleged issues bending, standing, walking, sitting, kneeling, seeing, memory, following instructions, concentrating, completing tasks, understanding, and getting along with others. (R. 80, 99). Without medical evidence supporting Wyatt's subjective complaints, such as the need to lie down due to headache side

7

effects, the ALJ's finding that Wyatt could perform jobs in the national economy, despite the vocational expert's testimony, was supported by substantial evidence.

### B. The ALJ's Implicit Finding Regarding Wyatt's Subjective Statements Was Supported by Substantial Evidence

The substance of Wyatt's second objection is similar to the first. Wyatt argues that an implicit finding that his testimony is not credible is not supported by substantial evidence. (Pl.'s Obj. 4).[2] Wyatt cites Titles II and XVI of Social Security Ruling 16-3P, which states in relevant part:

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3P, 2017 WL 5180304, at *11. The ALJ was not required to make an explicit determination regarding the reliability of Wyatt's testimony. *Shepard o/b/o Shepard v. Comm'r*

---

[2] Although the word "credibility" is used frequently by the Magistrate Judge and Wyatt, the updated regulations have removed this phrasing, stating:

> [W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.
>
> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms.

SSR 16-3P, 2017 WL 5180304, at *2.

*of Soc. Sec.*, No. 2:17-CV-10197, 2018 WL 1833513, at *13 (E.D. Mich. Jan. 11, 2018), *report and recommendation adopted sub nom. Shepard on behalf of H.E.S. v. Comm'r of Soc. Sec.*, No. 17-10197, 2018 WL 1061696 (E.D. Mich. Feb. 27, 2018) ("[T]he ALJ did not at any particular point shunt the entirety of [plaintiff's] testimony into a simplistic category of reliability. The ALJ did, however, regularly and repeatedly discuss [plaintiff's] pertinent testimony in conjunction with the rest of the medical evidence."). Regarding Wyatt's testimony, the ALJ summarized:

> His headaches occur daily. He has had to adjust his lifestyle due to ongoing headaches and sensitivity to light. He does take medications for his headaches, but they do not always work. The headaches cause him to become nauseated. The longest he remembers going without a headache since the accident is 2-3 days. He has been told he forgets things such as leaving the stove on or water running. He also takes medication for depression and anxiety.

(R. 19). The ALJ discussed Wyatt's testimony and subsequently found that Wyatt was able to perform a substantial amount of jobs in the national economy working in 2-hour segments over an 8-hour workday. (R. 20). Again, the ALJ found, "evidence shows that while he continued to complain of headaches, imaging of his brain was essentially normal, and he continued to receive conservative medication treatment." (R. 20). As the Magistrate Judge points out, the ALJ made an implicit finding that Wyatt's testimony, regarding the effects of the headaches, was not supported by the medical evidence in the Administrative Record. (R. & R. 5-6). The Magistrate Judge highlighted the high degree of deference afforded to the ALJ's findings. (R. & R. 5 (citing *Shepard v. Comm'r*, 705 F. App'x 435, 442 (6th Cir. 2017))). Further, "[t]he fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant." *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 452 n.4 (6th Cir. 1986). The ALJ acknowledged the lifestyle adjustments Wyatt made due to his headaches and the treatment course, showing an engagement with the record. (R. 19). The ALJ then found that Wyatt's testimony regarding his

9

headache symptoms was inconsistent with the imaging of Wyatt's brain and a conservative medication treatment course. (R. 20).

While the ALJ did not explicitly state that Wyatt's reported subjective complaints were not reliable, his summary of Wyatt's testimony, discussion of the objective medical evidence, and subsequent finding that Wyatt was capable to perform jobs in the national economy explained the basis of the decision and was therefore supported by substantial evidence. The Magistrate Judge's conclusion that the ALJ implicitly found the extent of Wyatt's reported headache symptoms not supported is correct.

## V.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 28) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY**, Plaintiff's Objection (DN 29) is **OVERRULED**, and the Complaint (DN 1) is **DISMISSED**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

March 16, 2022

cc:     counsel of record